United States District Court
for the
Southern District of Florida

| | |
|---|---|
| United States of America, ) | |
| Plaintiff ) | |
| v. ) | Criminal Case No. 18-20725-CR-Scola |
| Misael Rodriguez Perez, ) | |
| Defendant. ) | |

<u>Order Following Evidentiary Hearing on Motion to Suppress</u>

    The Defendant, Misael Rodriguez Perez, has been indicted and charged with one count of possession of fifteen or more unauthorized access devices and three counts of aggravated identity theft based upon the seizure of re-encoded credit cards and gift cards from the Defendant's pickup truck at a gas station. Rodriguez has filed a motion to suppress physical evidence [ECF No. 21] in which he claims he was unlawfully detained, the search of his truck was unlawful, and the physical evidence should be suppressed as fruits of that unlawful search. The Government filed a response [ECF No. 25] to the motion.

    The Court conducted an evidentiary hearing on the motion on November 2, 2018. The following witnesses testified: Detective Yunieski Arriola, Detective Alberto Roque, Lazaro Daniel, and Detective Brandon Ashe.

    After considering the credible evidence and testimony and the relevant legal authorities, and for the reasons set forth below, the Motion to Suppress is **denied**.

*Findings of fact:*

    On October 27, 2016 at approximately 9:00 p.m., Detectives Yunieski Arriola and Brandon Ashe of the Miami-Dade Police Department observed approximately ten pick-up trucks at the Sunshine Gas Station located at 1698 NW 79th Street. Arriola saw illegal fuel bladders in the beds of some of the trucks. Many of the trucks were pumping fuel into the bed of the pick-up trucks, while a few were waiting for a turn to use the fuel pumps. As the officers flicked their emergency lights and drove into the gas station, all but four of the trucks fled. Arriola observed Yuniet Fuentes pumping gas into the bed of his truck and also noticed the black handle of a firearm visible above his front right jeans pocket. Arriola and Ashe exited their vehicle and approached Fuentes on foot. Arriola does not recall whether he drew his weapon. He and Ashe were wearing

tactical vests with the word "Police" in large white letters. They also noticed Fuentes toss a small Louis Vitton pouch onto the ground away from his truck. Inside the bag, officers found seventeen re-encoded credit cards. Fuentes was detained for openly carrying a firearm but was given a promise to appear.

The two officers observed fuel bladders plainly visible in several of the trucks, including the truck near Rodriguez Perez. Rodriguez Perez was pumping fuel into the bladder. The fuel bladder in Rodriguez Perez' truck was designed to look like a tool box but it had visible openings for inputting and extracting gasoline. The pickup of Rodriguez Perez also contained to large barrels. Rodriguez Perez was pumping gas into the bladder. Arriola ran the tag of the pickup and learned it was owned by Rodriguez Perez. Rodriguez Perez was detained. Arriola patted down the Defendant for weapons but did not take his wallet. The Defendant was handcuffed.

Arriola asked Rodriguez-Perez to consent to a search of the pickup. Arriola speaks Spanish fluently and spoke to the Defendant in Spanish. Ashe does not speak Spanish so he relied on Arriola to communicate with the Defendant. Arriola told Ashe that all four of the men had consented to search their trucks. The consent was obtained orally and no consent form was used. The Defendant consented to a search of his truck saying to Arriola, "yes, go ahead; no problem." Arriola did not advise Defendant that he could refuse to consent. Arriola found multiple re-encoded cards in the other trucks and recovered sixteen gift cards, which had been re-encoded with credit or debit card account numbers issued to other people, in Rodriguez Perez's pickup truck. Arriola was going to arrest the Defendant but was told by his sergeant to call Detective Roque first.

Detective Roque works for the Miami-Dade Police Department, Economic Crimes Bureau. Roque was at home and spoke by telephone to Detective Ashe at 11:00 p.m. Ashe told Roque that he and Arriola had seen ten pickup trucks at a gas station, of which several were pumping gas into fuel bladders. Roque recalls that Ashe related that several of the men dropped wallets and pouches on the ground which contained fraudulent credit cards and gift cards. But Ashe testified that he only told Roque about the one man who threw the pouch. Ashe also recalls telling Roque that Arriola had spoken to the men in Spanish and obtained consent to search the trucks and that they had found fraudulent cards inside the trucks. Roque took notes of his conversation with Ashe but did not prepare his incident report until more than one year later. Roque did not recall Ashe mentioning that the drivers had consented to search their vehicles. Roque is unaware if the transaction history of the pumps was studied to see if any of the fraudulent cards had been used to purchase gasoline that night.

Roque explained to Ashe that he was conducting a large racketeering investigation relating to large fuel farms re-selling gasoline that was obtained using fraudulent credit cards and illegal fuel bladders. Roque was interested in the higher-ups at the fuel farm more than the fuel transporters. The fuel transporters use the fraudulent cards to obtain the fuel. Roque felt that arresting these individuals might jeopardize his investigation. Roque was familiar with two of the four individuals but was not familiar with two. Roque told Ashe to document, impound and photograph everything. The cards were seized and impounded by Arriola and later turned over to Roque at the police station but the Defendant was released at the scene.

Lazaro Daniels has been an investigator with the Federal Public Defender's Office for eight months. He previously worked as a police officer with the Miami-Dade Police Department, Economic Crimes Division. Daniels looked that the fuel tanks on the Defendant's pickup truck. There is label on the fuel bladder in the Defendant's pickup. Using another sticker on the bladder, he learned the bladder was manufactured by RDS Manufacturing. He also spoke with someone at RDS. RDS manufactures DOT-approved tanks designed to fit into the bed of pickup trucks which appear identical in appearance to the tank in the Defendant's pickup truck.

*Legal analysis:*

The physical evidence at issue in this case was seized through a warrantless search. "Upon a motion to suppress evidence garnered through a *warrantless* search and seizure, the burden of proof as to the reasonableness of the search rests with the prosecution. The Government must demonstrate that the challenged action falls within one of the recognized exceptions to the warrant requirement, thereby rendering it reasonable within the meaning of the fourth amendment." *United States v. Freire*, 710 F.2d 1515, 1519 (11th Cir. 1983) (emphasis in original) (internal citation omitted).

The Fourth Amendment guarantees that individuals will be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. A warrantless arrest is only permissible where an officer witnesses the commission of a crime or where an officer has probable cause to believe that a felony has been or is being committed. *See United States v. Watson*, 423 U.S. 411, 418, 422 n.11; *Maryland v. Pringle*, 540 U.S 366, 373-74 (2003). Probable cause to arrest does not exist unless law enforcement officers have facts and circumstances within their knowledge that are sufficient to warrant a reasonable belief that the suspect had committed or was committing a

crime. *See Beck v. Ohio,* 379 U.S. 89 (1964). Mere proximity to criminal conduct does not give rise to probable cause. *Ybarra v. Illinois,* 444 U.S. 85, 91 (1979). The suspicion must be "particularized with respect to that person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another . . . ." *Id.*

Here, the officers had probable cause to believe that Rodriguez Perez was committing a crime. Florida Statutes § 316.80(1) makes it a crime for any person to maintain or possess any vehicle that is equipped with fuel tanks, bladders, drums, or other containers that to not conform to 49 C.F.R. or have not been approved by the U.S. Department of Transportation for the purpose of hauling, transporting, or conveying motor or diesel fuel over any public highway. Based upon the officers' training and experience, they knew that persons who are involved in illegally transporting fuel, most often use fraudulent credit or debit cards to purchase the fuel. The fuel is most often re-sold and there would be no profit for the transporter if they purchased the fuel at fair market value from the gas stations. Even if the tank on the Defendant's truck is ultimately established to be a DOT-approved tank, the issue is whether, upon their arrival at the gas station on the night of October 27, 2016, the police, based upon the totality of the circumstances, had reason to believe Defendant was committing a crime. Here, the Defendant was pumping fuel at night simultaneously with three other pickup trucks with fuel bladders in the beds of the trucks. Even if the Defendant's bladder is ultimately established to have been a legal bladder, his acting in concert with the other pickup trucks with clearly illegal bladders supports a finding of probable cause. Furthermore, when police arrived, one of the drivers made a furtive movement by throwing a pouch on the ground. Based upon the totality of the circumstances, the officers had probable cause to arrest the Defendant and were, thus, authorized to search his vehicle incident to the arrest.

Assuming arguendo that the police did not have probable cause, they certainly had reasonable suspicion to conduct a brief investigative stop pursuant to *Terry v. Ohio,* 392 U.S. 1 (1968). To be valid, *Terry* stops must be reasonable and based on some objective justification, not on a mere hunch of criminality. *See United States v. Sokolow,* 490 U.S. 1, 7 (1989); *see also United States v. Cortez,* 449 U.S. 411, 417 (1981) ("An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity."). The suspicion must also be particularized—the totality of the circumstances "must raise a suspicion that the particular individual being stopped is engaged in wrongdoing." *Id.* at 418. *See also United States v. Acosta,* 363 F.3d 1141, 1144-45 (11th Cir. 2004); *Rankin v. Evans,* 133

F.3d 1425, 1435 (11th Cir. 1998). Here, under the totality of the circumstances, the police were justified in conducting the brief, investigatory stop.

In the alternative to a search incident to arrest, the Court finds that the search of the pick-up truck was valid because Rodriguez Perez voluntarily consented to the search of his pick-up. It is "'well-settled that one of the specifically established exceptions to the requirement[] of . . . a warrant . . . is a search that is conducted pursuant to consent.'" *United States v. Freyre-Lazaro*, 3 F.3d 1496, 1500–01 (11th Cir. 1993) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). The consent must be voluntary. *United States v. Ramirez-Chilel*, 289 F.3d 744, 752 (11th Cir. 2002). Voluntariness is based on a totality of the surrounding circumstances. *Schneckloth*, 412 U.S. at 222. The Court finds that no threats or promises were made to Rodriguez Perez. The officers never brandished their weapons. Although it would have been more advisable to notify the Defendant that he had a right to refuse to consent, this does not invalidate the consent.

Rodriguez Perez claims that he was illegally detained and the consent was tainted by his illegal detention. But, officers had probable cause to arrest him or, in the alternative, had founded suspicion to briefly detain him. Thus, his consent was not tainted by an illegal detention.

*Conclusion:*

The Court considered Rodriguez Perez's motion to suppress [ECF No. 21], the Government's response [ECF No. 25]. The Court additionally considered arguments and the credible testimony and evidence during the evidentiary hearing. The Court makes the following findings: (1)

Accordingly, the **Motion to Suppress** [ECF No. 21] is **denied.**

**Done and Ordered** at Miami, Florida, on November 5, 2018.

_____
Robert N. Scola, Jr.
United States District Judge